IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION


LISA WILSON O/B/O JLW,                    )
                                          )
            Plaintiff,                    )
                                          )
v.                                        )        Civil Action No. 2:06-CV-860-TFM
                                          )            WO
MICHAEL J. ASTRUE,[1]                     )
COMMISSIONER OF SOCIAL SECURITY,          )
                                          )
            Defendant.                    )


**<u>MEMORANDUM OPINION AND ORDER</u>**

Lisa Wilson ("Wilson") applied  for supplemental security income under Title XVI, 42

U.S.C. §§ 1381 *et seq*., on behalf of her minor daughter, J.L.W. ("JLW"), who is now 11 years

old. After the administrative denial of her application, JLW petitioned for and received a

requested hearing before an administrative law judge ("ALJ").  On September 22, 2005, the ALJ

ruled against JLW.  Specifically, the ALJ held that JLW  was not under a "disability" as defined

in the Social Security Act at any relevant time in issue.[2]  Further, the ALJ found the impairments

of JLW did not amount to "marked and severe "functional limitations.[3]  On August 3, 2006, after

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as Defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]R. at 36.

[3]R. at 28-34.

receiving additional documentation of JLW's treatment, the Appeals Council rejected review,

thus, the ALJ's decision became the final decision of the Commissioner of Social Security

("Commissioner").[4]  Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. §

636 (c).

     After careful scrutiny of the record and briefs, the court AFFIRMS THE

COMMISSIONER'S DECISION.

## I.  STANDARD OF REVIEW

     Judicial review of the Commissioner's decision to deny benefits is limited.    The court

cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner.

*Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982). The Commissioner's decision must stand

conclusive "if it is supported by substantial evidence and the correct legal standards were applied."

*Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), *citing Graham v. Apfel*, 129 F. 3d 1420, 1422

(11th Cir. 1997).

     Substantial evidence is less than a preponderance; instead, it is considered such relevant

evidence as a reasonable person would accept as adequate to support a conclusion.  *Crawford v.*

*Commissioner of Soc. Sec*., 363 F.3d 1155, 1158-59 (11th Cir. 2004); *Falge v. Apfel*, 150 F.3d 1320,

1323 (11th Cir. 1998). As substantial  evidence is "more than a scintilla," *Hale v. Bowen*, 831 F.2d

1007, 1011 (11th Cir. 1987),  it "must do more than merely create a suspicion of the existence of the

fact to be established." *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988).  The court must

examine the evidence as a whole, taking into account evidence favorable as well as unfavorable to

---

[4]R. at 4-7.

the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11ᵗʰ Cir. 1995).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine the Commissioner properly applied the law. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II. ADMINISTRATIVE FINDINGS

JLW was a nine year old, fourth grade student during the administrative hearing on August 25, 2005.[5]  Wilson alleges JLW suffers from anxiety, bipolar disorder, schizoaffective traits, and attention deficit hyperactivity disorder (ADHD).[6]  JLW, a young child, has never engaged in substantial gainful activity, and consequently, has not done so since April 30, 2003, the alleged onset date of disability.[7]  Wilson testified that JLW has a mood disorder, cuts her hair off, see things, and hears voices.[8]  JLW reached developmental milestones in a timely manner, has a family history of bipolar disorders, and scored in the low average range of intellectual functioning.[9]

The ALJ concluded the medical evidence supported findings of the following "severe" impairments: attention deficit hyperactivity disorder, combined type; learning disorder, not otherwise specified; generalized anxiety disorder; mood disorder, not otherwise specified; and,

---

[5]R. at 25.

[6]R. at 18.

[7]R. at 25.

[8]R. at 25.

[9]R. at 18-19.

oppositional defiant disorder.[10]  The ALJ found JLW to have the following impairments in the specified domains: (1) mild impairment - acquiring and using information; (2) moderate impairment - attending and completing tasks; (3) moderate impairment - interacting and relating with others; and, (4) mild impairment - caring for herself.  The ALJ found that JLW was not impaired in the domains of moving about and manipulating objects, and health and physical well-being.[11]  The ALJ applied the guidelines for determining disability using the domains of functioning method at 20 CFR 416.926a(e) to conclude that JLW's impairment of functioning did not meet the levels necessary for her to establish disability.[12]  Next, the ALJ explained the weights assigned to the opinions of JLW's physicians and information from her teacher.[13]  Accordingly, the ALJ found JLW was not disabled within the meaning of the Social Security Act.[14]

---

[10]R. at 25-26.

[11]R. at 26-34.

[12]R. at 34, 36.

[13]R. at 36-38.

[14]R. at 38-39.  The ALJ's disability analysis followed the  sequential evaluation process for child disability determinations set forth in 20 C.F.R. §416.924, and summarized in *Shinn v. Commissioner of Social Security*, 391 F. 3d 1276, 1278-79 (11th Cir. 2004).

### III.  ISSUES

Wilson presents two issues for judicial review:[15]

> 1.  Whether the ALJ erred in failing to accord greater weight to the opinion of the treating psychiatrist.
>
> 2.  Whether the Appeals Council erred in failing to remand for review of previously submitted evidence.

### IV.  DISCUSSION

**A.**   **The ALJ Identified A Sound Legal Basis For His Decisions Regarding The Weight Accorded To The Opinion Of The Treating Psychiatrist.**

On appeal, JLW challenges the ALJ's decision to discount the opinion from one of her treating psychiatrists, Dr. Fernando Lopez ("Lopez").[16]  The Commissioner responds that the ALJ properly evaluated the treating physician evidence and properly resolved conflicts in the record.  The Court finds that the ALJ stated a basis for his decision to give lesser weight to Lopez' opinions in this case, and the record supports his decision.

A treating physician's opinion "must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'"  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004), citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  "Good cause" is present where the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own

---

[15]*See* Plaintiff's Brief in Support of Complaint ("*Pl.'s Br.*") at 1 (Doc. #14, filed January 10, 2007) *and* Order filed September 28, 2006 (Doc. #)(directing Plaintiff to a brief in support of his claim(s) and to include in her brief a section titled "Statement of the Issues" which "shall state in a concise, and specific manner each issue which the plaintiff presents to the court for resolution").

[16]*Pl. Br.* at 5.

medical records." *Id.* at 1241, citing *Lewis.* When assessing medical evidence, an "ALJ [is] required to state with particularity the weight [given] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) (per curiam).  Social security regulations require an ALJ  to consider a variety of factors when evaluating medical opinion evidence, including the examining and treatment relationships, the specialization of the person giving the opinion, and how well the record supports the opinion in question.  *See* 20 C.F.R. § 404.1527(d)(1)-(6).

The incongruity between Lopez' opinions of JLW's function and the record as a whole  led the ALJ to discount the opinion of Dr. Lopez.  Lopez treated JLW at East Central Mental Health - Mental Retardation, Inc. from 2003 through 2005, and prescribed various medications for her diagnosed hyperactivity.[17]  The treatment records from this facility show that JLW enjoyed school and was compliant with her medicine.[18]  Other records acknowledge reports of JLW cutting her hair, being unable to sit still in school, and having hallucinations.[19]  On February 14, 2005, Lopez completed a check-type form provided to him by counsel to JLW, which was captioned "Child Development and Functioning Rating."[20]  Lopez used the form to indicate JLW had marked limitations in acquiring and using information, attending and completing tasks; and caring for

---

[17]R. at 167.

[18]R. at 159, 162, 163, 164.

[19]R. at 165, 166, 176.

[20]R. at 188-89.

6

herself.[21]  Lopez also indicated that JLW had extreme limitations in interacting and relating with others, and in moving about and manipulating objects.[22]  A "marked" limitation occurs when the impairment(s) interferes seriously with the ability to independently initiate, sustain, or complete activities while an "extreme" limitation occurs when  the impairment(s) interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. 416.926a(e).

The ALJ began to explain his decision to discount Lopez' report by first noting two glaring incongruities - (1) that Lopez is a psychiatrist who never treated JLW for any physical impairments, but nonetheless concluded that she was extremely limited in moving about and manipulating objects;[23] and, (2) that Lopez' conclusions of  JLW's marked limitations in acquiring and using information conflicted with indications from her school record and teacher's statement that she was functioning on grade level in regular classes, and had made her school's honor roll.[24]  Under *Phillips*, Lopez' opinion could be discounted because his report of JLW's physical impairment was outside his specialty area of psychiatry, and his report of JLW's difficulty in acquiring and using information was contradicted by her performance in school.  *Phillips, id.*  The ALJ continued to explain that Lopez' opinion was not substantiated by any clinical or laboratory findings, as the entire opinion was communicated through the check-type form without any narrative or analysis.[25]

---

[21]R. at 22, 188-89.

[22]R. at 22, 188-89.

[23]The court notes that Plaintiff Wilson testified that JLW did not have any problems with her hands, arms or legs.  R. at 252.

[24]R. at 37.

[25]R. at 37.

7

The ALJ continued his evaluation of Lopez' under criteria from *Phillips* by noting inconsistencies with the recorded opinions concerning JLW by another treating psychiatrist, a treating psychologist, and her teacher.  Dr. Audrey Hall ("Hall") of the Laurel Oaks Behavioral Health Center treated JLW during her hospitalization in June of 2005.  Hall acknowledged JLW's family history of bipolar disorder, but found that JLW was unconvincing when describing her alleged hallucinations, and that they were "extremely fantasy based and unlikely to be psychotic."[26]  Hall also "suspected [the hallucinations] to have been discussed at home and encouraged."[27]  Melanie Cotter, Ph.D. ("Cotter"), found JLW to be "somewhat impressionable and suggestible," and indicated that the psychotic phenomena was the result of underlying anxiety about her parents and her future care.[28]  The Hall/Cotter opinions are supported by clinical findings and well-supported explanations for the respective conclusions.[29]  Dr. Nancy Sack ("Sack"), a medical expert who testified at the hearing, also noted the great distinctions between the varying conclusions of Drs. Lopez and Hall/Cotter.[30]  Sack found great reliability in the impartial observations by the staff at Laurel Oak during JLW's hospitalization of a relatively normal child, and, in contrasting these reports with Lopez' opinion, likened them to those of teachers who observe JLW over time.[31]

Finally, the ALJ provided further support for discounting Lopez' opinion by contrasting it

---

[26]R. at 22, 196.

[27]R. at 22, 196.

[28]R. at 23, 199, 203.

[29]R. at 196-98, 199-203.

[30]R. at 262-64.

[31]R. at 262-63.

with the report from JLW's teachers, financially disinterested parties, who had the "opportunity to observe, work with and teach" JLW on a daily basis.[32]  Teachers' reports of "a child's behavior may provide substantial evidence of a mental disorder, or the lack thereof."  *Flener ex rel. Flener v. Barnhart,* 361 F.3d 442, 448 (7th Cir. 2004).  Reports from JLW's second and third grade teachers both reflected average performance at grade level with no obvious difficulties in regulatory domain functioning.[33]  The ALJ's citation to these reports provide support for discounting Lopez' opinion under the two alternative prongs of the "good cause" standard in *Phillips* - the treating psychiatrist's opinion was not bolstered by the evidence, and other evidence supported a contrary finding.  *Phillips, id.*

The Eleventh Circuit has held that an ALJ may reject any medical opinion if the evidence supports a contrary finding.  *Syrock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).  The ALJ in this case rejected Lopez' opinion for this very reason, and cited sufficient grounds in the record for discounting his opinions of JLW's functional abilities under *Phillips*.[34]  The record shows no error on this issue.

**B.    The Evidence Submitted To The Appeals Council Did Not Justify A Remand.**

Wilson argues that the Appeals Council erred because it did not remand JLW's case after receiving updated records of her care.[35]  The Commissioner responds that the Appeals Council is not required to remand where additional evidence does not meet the remand standard in this Circuit.

---

[32]R. at 38.

[33]R. at 25, 27.

[34]R. at 36-37.

[35]*Pl.'s Br.* at 8.

9

The court finds that a remand was not required and that the Appeals Council did not err.

A plaintiff can only succeed on a claim that remand is appropriate where she shows that "(1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and, (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." *Falge, id. at* 1323. Although Wilson submits that the additional treatment records for JLW meet the *Falge* criteria, the court does not agree. Wilson asserts that the records show JLW's continued treatment at East Central Mental Health by Lopez and medication changes for the time period of January 18, 2005 through August 29, 2005.[36] While this description is correct, the nature of the information concerning JLW's continued treatment does not satisfy *Falge*. The administrative hearing was conducted on August 25, 2005, and Wilson's counsel noted during the hearing that Lopez had "observed [JLW] over time during the course of her treatment since December 2003."[37] Thus, the evidence of continued treatment (1) was cumulative of that previously considered by the ALJ and, (2) did not materially affect the administrative result, which found that JLW was not disabled despite identified mental impairments which require ongoing medication and psychiatric care. Therefore, the additional records do not raise any material issues that were not encompassed within the scope of the hearing. Finally, Wilson has not shown good cause for her failure to submit the records to the ALJ. Wilson has not made the showing required for a remand and the matter is due affirmance.

---

[36] *Pl.'s Br.* at 8-9.

[37] R. at 265.

For the reasons set forth supra, the decision of the  Commissioner is **AFFIRMED**.

Done this 22nd day of March, 2007.

/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE